Good morning, counsel. Our first case for today is case number 415-0287. The people of the state of Illinois v. Brian Maggio. Is that how you pronounce that? My name is Maggio. Maggio. Brian Maggio. And for the appellant, we have Mr. Wilson. And for the appellee, we have Mr. Londrigan. You may proceed, counsel. May it please the Court. Counsel. Good morning, Your Honors. I represent Brian Maggio on behalf of the Office of the State Appellate Defender. I plan to begin my argument today by discussing Issue 3, which is the sentencing argument. And then before the end of the argument, circling back around discussing Issue 1B, which is the ineffective assistance of counsel argument regarding the enforceable felony language in the self-defense statute. As was his right, Brian decided not to assess court services in the preparation of a pre-sentence investigation report. His invocation of that Fifth Amendment right to silence, however, was used against him at sentencing by the trial court. The court, during sentencing, found it significant and troubling that Brian refused to participate in the pre-sentence procedure. The court concluded that he was not excused from cooperating with the court services officer, who the trial court noted was an officer of the court. The court found that Brian's failure to participate in the pre-sentence investigation process spoke volumes about his attitude. And most importantly, the court noted that his failure to participate in the preparation of the pre-sentence investigation report was something that the court would take into consideration when it measured his rehabilitative potential. Now, I say that final thing might be the most important, because this final statement evidenced the court's intent to use Brian's silence, the invocation of a constitutional right, when it was determining his rehabilitative potential as a constitutionally mandated factor that the court considers when it is fixing the length of a defendant's criminal sentence. Now, the state, in its brief, seems to agree that the court committed error here, that the court should not have used Brian's right to silence against him at sentencing. And so, the real issue we have here is whether this mattered. And the state's burden on that topic is very high. In order for Brian's case not to be remanded for a new sentencing hearing, this court would have to find that the court's error did not contribute to his sentence beyond a reasonable doubt. And based on this record, we simply can't reach that conclusion. Brian was sentenced to 20 years more than the minimum sentence he could have received. He received 65 years here. He was 42 for around the time of trial. He's going to spend the rest of his life in prison. And so, the question becomes, why did the court feel that a 65-year sentence, 20 years above the minimum, was the right sentence for Mr. Maggio? Well, counsel, when we look at the court's comments, don't you think the court demonstrates that there are other factors that weighed heavily on the court as far as this taking place? And a business, other people present, the possibility of harm to other people. So, can't we say that the fact that he didn't cooperate with the PSI wasn't necessarily a major factor in the court's sentencing determination? There are other factors that the court did consider in sentencing. Absolutely, the court did. But the relevant question is, did the court's analysis or determination regarding his rehabilitative potential, did the court's conclusion that his failure to participate in the PSI proceedings reduce his rehabilitative potential? Tell me, did he invoke his Fifth Amendment right? He didn't invoke his Fifth. He didn't tell the court services officer, no, I'm not going to speak to you. But he, as the court, I believe, put it, willfully decided not to participate in the prison's investigation proceedings. I'm still trying, I want to get over the first issue. Okay. I mean, I don't, I understand the defendant saying, well, I'm not going to answer questions about marijuana use or things that aren't particularly relevant to the crime or to my rehabilitation. I'm not going to answer questions about extraneous matters like I had an illegitimate child or, you know, whatever. I know defendants sometimes get hammered because they end up saying they've had six children by six different people and they haven't paid any child support. I mean, judges make reference to that kind of thing. But unless you use your right to counsel, i.e. getting advice from counsel about the level of participation you should engage in, just flatly refusing does say something about rehabilitative potential. It does say something about your acknowledgement that, I think, I was afraid for my life. I understand, you know, that wasn't accepted as a defense. But here are the positive things that I can tell you. I mean, that's what I would advise my client if I was that criminal defense attorney. And I'm not saying that this puts some additional responsibility on the criminal, you know, the defendant makes up his own mind. And, counsel, that leads me to the question when we're talking about invoking the Fifth Amendment right, as Justice Kinnick was just saying, there are positive things that come out in a PSI. And so can you just say I'm invoking my Fifth Amendment right to not participate in this at all when some of the information that would come forward would not be incriminating, would be positive? I am unaware of a case that compels a defendant to participate in this sort of thing at all. I'm unaware of a case where a court services officer comes to prison and says, I'd like to meet with you because I want to prepare this pre-sentence investigation report. I'm aware of no precedent that would say the defendant is compelled to participate in any way. Sure, sure. And I would agree with you. I don't think the defendant has to. But the question before us is, well, two things. First of all, is there a Fifth Amendment right against providing positive information? I would think not. And then the other question becomes, even though you don't have to participate, is it improper for the court to consider your failure to participate? And I guess a concern that I would have, given the discussion that we're having, is the court, when it sentenced Mr. Maggio, didn't parse out, I'm going to hold against you the fact that you didn't tell the court services officer the good things about her. I'm going to hold against you the fact that you didn't tell court services the good things about you. And I'm not going to hold against you the fact that you didn't tell them the bad things about you. Well, let's suppose that it's not, it's probation is available. Okay. I'm not going to talk to you. Could that be used to help determine that the defendant wasn't a likely candidate for probation? If the person is not going to cooperate with those people who are going to be supervising him or her, and appears in doing that, they may be suggesting you don't have authority over me, or I don't care about your services, as a trial judge, would I be entitled to take that into account? I think there are two different questions there. Because if it's an issue of the defendant talking to court services to determine whether or not he's a good candidate for probation. Well, how do you know that without a PSI? How do you know that without some determination of the defendant's background, character, the things about them that don't come out in the trial? This human being has the opportunity to explain to you their life. And as a sentencing judge, I wanted to know about defense. Sure. I sure ended up hearing about a tragic childhood, abuse, sub-average intelligence, conflicts, which sometimes that cuts both ways. Or you hear about mental health, and sometimes that cuts both ways. What's the difference? Well, again, I don't know that even if what we're talking, even if that position is correct, I don't know how we can parse out this idea of some things were held against him and other things weren't. In the brief, I point out that when Brian was first sentenced, the court seemed to place weight on the fact that he had a problem with alcohol, and that he had problems with stress, and didn't go and seek counseling for that. The only conceivable way that I can think of that the court would learn that is by the statements that Brian gave to the court services officer. If I were in Brian's position, and I went to trial, I was convicted, I was going through the sentencing process, and the court services officer comes back, I'm not going to talk to him at this point, because the information that I had given to that court services officer was information that was used to increase my prior sentence. The court here, when the court said that this was a factor that the court was going to use, not to determine whether something like probation was appropriate, but when the court said this factor is significant when I'm determining your rehabilitative potential, the court didn't say, I understand that there may have been incriminating things that you decided not to tell the court services officer, so I'm not going to hold that against you. But how did the court know that he was invoking his Fifth Amendment right? I don't know that there needs to be a definitive exercise of that. If he simply refuses to participate in that process... Wait a minute. If a guy says, I'm not going to talk to you, but doesn't invoke his Fifth Amendment right, can police officers continue to question him? He's saying, I don't want to, you know, you guys are just out to get me. They've already given his Miranda, but he doesn't say, I want counsel. I have not looked at that issue recently, so I don't want to comment on what the definitive law is on that. But I should note, the cases here that have been cited in the brief, and the state has even agreed that the court committed error by doing this. I don't pay any attention to this. Again, what I have a problem with, even if this is the way that the court views what occurred here, there is no way to know whether the court used statements that could have incriminated Brian, that he didn't provide as a product of his assertion of the Fifth Amendment right, against him. And in order for that to be held harmless, the state has to show that it's harmless beyond a reasonable doubt. This screens to me as a case where we're balancing a defendant's unlawful use of a constitutional right against him, versus giving him a new sentencing hearing to ensure that he is sentenced appropriately. Weighed on that scale, I think the answer comes out every time to, let's not take a chance, especially with a standard like this, the harmless beyond a reasonable doubt, especially with a constitutional issue. Let's not take a chance. Let's send this back. And maybe he gets the 65 years again. Maybe. But at least we know that he has been guaranteed a constitutional process, something that this record demonstrates he was not given at this point. Brian Maggio, while there were factors that the court considered during sentencing, he was a father, a husband, a person who was a business owner. He'd been in that community all of his life. He grew up taking care of his father's grocery stores ever since he was a kid. This isn't some hardened criminal that's gone out and performed a criminal act and is probably going to perform a criminal act again. This was a crime of passion. He should be given the opportunity to have a sentencing hearing where there can be no question that the court considered only relevant constitutionally available factors. And we know from this record the court did not do that. At this sentencing hearing, who testified? His brother's widow. Well, his brother's widow gave a statement, read a statement. I think Brian and Mark's dad testified. And there may have been additional witnesses, but I'm drawing a blank on who the remaining witnesses may have been. Well, it would be interesting to know whether any witnesses provided the information that you're talking about. Regarding, I'm sorry? His rehabilitative potential, his connections to the community. The court did have a pre-sentence investigation report that was prepared after his guilty plea. So the court did have some. But it didn't have his participation, but it did have the participation of others? Yes, it had his participation initially. Correct. But did it have the participation of others? That I don't recall. So at the very least. What if he's declined to cooperate with further pre-sentence investigation? Well, never mind. Go ahead. So at the very least, in order to ensure that he's given all of his constitutional rights, ensure that he has received a fair sentencing hearing, and ensure that none of this 20 years that the court, over the minimum that the court sentenced him to, was a product of Brian invoking his constitutional right, we would at least ask that this case be sent back for a new sentencing hearing. But again, rounding back to Issue 1B, which is the ineffective assistance of counsel claim, frankly, this is a claim that interests me. Because it's a claim that I don't see, or involves something I don't see defense attorneys using. And that is the forcible felony language in the self-defense jury instruction. The jury in this case was told that Brian could have shot Mark if he was in fear of receiving death or great bodily harm. But what the jury wasn't told was, he could also have shot Mark if he was worried that Mark was going to commit a forcible felony. Now, there may very well be forcible felonies that don't involve death or great bodily harm. In fact, what is significant about this claim is how broad forcible felony can be defined. The forcible felony statute sets forth a list of specific felonies and then kind of has a catch-all that was somewhat eye-opening to me. It says, it lists the felonies and says, and any other felony which involves the use or threat of physical force or violence against any individual. What we know from this case is that Brian asserted that he shot Mark in self-defense. We know that part of his claim was that he thought that Mark had a gun. As I set forth in my brief, they had just had a physical altercation in the grocery store. Mark had threatened to beat Brian prior to this so severely that he would be unable to work any longer. That was many years prior. I'm not sure it was many years prior. I thought it was 2008. Am I remembering incorrectly? I don't remember how much earlier it was. Brian did testify that he was aware of that threat and took that threat very seriously. There was a prior fight with an employee that I know happened years prior, but I may even be confusing the two. Given all of this, the question becomes, what was defense counsel's obligation here? If Brian is asserting a self-defense claim, my argument would be Brian's attorney's obligation was to give the jury any reasonable ground with which Brian could have exercised his right to self-defense, which would include giving the jury this forcible felony language. What complicates this matter even further is the fact that during its closing argument, the state told the jury, when Brian Maggio followed his brother to the doorway of the store with this gun, did he reasonably believe he was faced with deadly force? No, and therefore he is not entitled to use deadly force and claim self-defense on that basis. That's not the law in Illinois. The law in Illinois is that you can use deadly force in self-defense if you believe you're going to be the victim of death, great bodily harm, or a forcible felony. But the jury was never told that. They never heard this forcible felony language. How does that square with the defendant's theory of the case, though? In what way? Self-defense because there's a gun in the car. Well, part of Brian's defense was, so to give you a little timeline here before my time expires, they had the scuffle, they had the fight in the grocery store. Brian pulls out his gun, the fight stops. Mark takes off through the grocery store. At that point, Brian's thinking, Mark's going to go get a gun from his car. Right. Brian follows Mark. Mark gets to the doors. Mark turned to me, and I thought I saw a gun. And at that moment, I shot him. So if Brian thought that Mark had a gun in the store, regardless of whether the jury believed that Brian saw Mark pull out that gun, if Mark was carrying a gun on his person, that's an unlawful act. Given the fact that they had just had this fight in the store, if Brian believed that his brother had a gun and was going to use it against him, regardless of whether the jury, which, by the way, deliberated for five hours in this case. Obviously, the jury was thinking about something. If the jury disbelieved Brian's argument that Mark pulled out the gun, maybe the jury would have believed that Mark illegally had a gun or that Brian reasonably thought that Mark had a gun. And wouldn't that be covered by if you reasonably believe that such force is necessary to prevent imminent death or great bodily harm to yourself? Doesn't that cover that? I can see a jury saying no, it would not be covered by that. Because if I have a gun tucked in my pocket or something, and somebody sees that gun, it doesn't mean I'm going to pull it out and shoot them. It doesn't mean that they are in imminent danger of death or great bodily harm. Is carrying a gun illegally a forcible felony? If it is carrying it illegally, and I would say that it is. It would be aggravated and unlawful use of a weapon, which is any felony. And if it was a felony that involved a force or threat of force, which in this context, I would say if Brian thought that Mark had a gun given their recent fight, I would say that involves the use or threat of force. I see that my time has expired. Thank you. Thank you. You're watching it closer than I am. Thank you. Mr. Mondragon. Good morning, Your Honors. May it please the Court, Counsel. I suppose I'll follow the same procedure that opposing counsel did and address issue number three first. First of all, to be clear, the State is not conceding error, regardless of whether Justice Nett listens to the concession or not. I, in my brief, simply noted that the State agrees that the defendant enjoys the right to be silent at that particular aspect in the sentencing procedure. And that's what the case law indicated. I am aware of no case law that suggests that a defendant can be required to participate. So the issue is if he does not participate, can the Court consider his non-participation as a factor? I suppose if you were to argue that the Court can consider his silence as the absence of any evidence in mitigation, I think that the Court would be appropriate in considering the lack of the evidence. However, to suggest, in all fairness to the defendant, could you rely upon the silence of the defendant alone as a factor in aggravation, indicating a lack of, in this instance, rehabilitation? I think the Court should be cautious there. It does appear in the past that when a defendant has a constitutional right, the fact that he invokes that right generally cannot be used against him. I mean, that was the same thing. Just to use the argument number one, could the defendant, if he raises his constitutional right not to say anything to the investigating officer, could the State have used his silence at a trial? I believe we could not. So if the defendant raises that same right at a sentencing proceeding, can the State then use that? I would suggest probably not. Now, you could argue, as I was saying, the defendant then is refusing to offer any evidence in mitigation. I think that's fair. And then, Judge, you were concerned whether or not the defendant actually is invoking his Fifth Amendment right. I'm afraid to venture into that because if we do, then are you saying then that this particular aspect of the trial is of such importance that now the defendant requires counsel to be present during these PSIs so as to properly educate him as to what his rights are? Counsel wasn't necessarily required again to use the, for instance, that we have in argument number one, when the investigating officer appears at the scene, gives him his Miranda warnings, are we going to require that he says, I'm raising my Fifth Amendment right to remain silent and I'm not going to speak to you, Mr. Investigating Officer? I found no case law on that. So I don't see any case law that suggests a defendant has to understand and specifically invoke his Fifth Amendment right in order to enjoy it. You may be right. I'm just saying I would be cautious because I'm aware of no case law that suggests that. So to go back to argument number three, did the court seriously consider this defendant's silence in making its sentence of him of 65 years? I think a fair reading of the record suggests not. Clearly this defendant's choice not to participate in the PSI did not significantly move the court. The court noted that it reflected on his rehabilitative potential kind of offhandedly and then went on in great detail to suggest what the real concerns of the court were in fashioning the sentence that was given to this defendant. It appears as though the statements of the victims, the impact it had upon the victims, the callousness of the act, the fact that this was the defendant's own brother, the fact that he kicked his brother after shooting him, all these things I think suggested to the court that this defendant was a threat to society and required a sentence in the category given. And I think the offhanded comment about his fear to cooperate with the PSI was insignificant and therefore harmless. With regard to issue number one, there's a suggestion by counsel that a defendant may use deadly force in an attempt to defend himself against less than deadly force. And I don't believe that is the law. There is some confusing and loose language in the statutes and in some of the previous decisions as to what and when an appropriate instruction concerning a forcible felony would be. I think that the use of the term forcible felony, as it applies in the self-defense statute, is suggesting an action synonymous with the fear of death or great bodily harm that's previously mentioned. I don't believe it was the intent to adopt a definition of forcible felony which would include simply any action that could potentially carry a physical threat. That is a significant departure from what has been required in the use of self-defense when you're using violence like death. You're going to come out and kill someone. Can you shoot someone simply because he's carrying a weapon as was suggested by the court? We now have concealed carry. You can legally carry a weapon. Just because someone has a weapon on them does not justify someone coming up and shooting you. You have to be in imminent fear of a legitimate threat similar to that which you are about to undertake. If you're going to take someone's life or you're going to do something which creates an unreasonable threat of physical harm, you have to be faced with a similar type of threat to you. I think that is the law. If that law is believed to be unclear, I think this Court should take this opportunity to clarify that so that this ambiguity, if there is one, no longer exists. I don't believe that individuals have the right to use that type of force unless threatened by it. I think that is the law in the state of Illinois. If Mr. Maggio thought his brother was reaching for a gun, and that would bring it under the purview of what you just described, did the instruction instruct the jury regarding the fact that he could use deadly force if he thought he was being faced with deadly force? Yes, Judge, I agree. I mean, if the defendant testified that I saw my brother reach for a gun and the reasonable inference from that was he's reaching for it in order to use it, I therefore became afraid for my own safety. I thought he was going to shoot me, so I shot him in self-defense. That's perfectly... In that instance, would we need the forcible felony language? No, we would not. The language that was used is entirely appropriate. In the two cases, Hanson and Shamnitz discuss that very thing. They never suggest in those previous cases that the standard is less than death or great bodily harm. In those cases, the defendant was charged with multiple offenses, one being battery. But the court didn't suggest that you could kill someone by using an argument that you were being faced with a threat of less than death or great bodily harm. It suggested that these things were synonymous, that forcible felony was the same thing as a threat of death or great bodily harm, and therefore the failure to instruct on that forcible felony was harmless there because you could not get from one to the other. It basically didn't make any sense. But I think that is the law in Illinois. Again, if it's not clear, perhaps the court could take the opportunity to clarify. With regard to... I don't know if there was another issue that was particularly argued. There was no discussion about the self-defense, the lack of a, I guess, instruction on recklessness. I guess I'll address it briefly. Should the court have been instructed on what voluntary manslaughter because of the reckless nature of the defendant in shooting his brother because he didn't have his glasses on or because the weapon used was perhaps not the most accurate weapon? There's nothing in this trial record that suggests that this defendant acted in any way other than knowingly shooting his brother. The fact that he may not have had his glasses on and perhaps could have been a better shot if he did or if he used a weapon that was more accurate and he could have shot him in a more deadly portion of his body, that's hardly a defense. The issue is knowing versus reckless. Was his conduct knowing or was he simply not intending to actually shoot his brother at the time that he fired his weapon? It was a reckless act on his part. That is totally inconsistent with not only the evidence but with the defendant's own argument at trial. The defendant admitted that he pulled his weapon and intended to shoot his brother and did shoot his brother. So I think the court was entirely appropriate in not granting the involuntary manslaughter instruction. If the court has no further questions. I don't see any at this time. Thank you, counsel. Any rebuttal, Mr. Wilson? Regarding the sentencing issue, we initially discussed the fact that there were other factors that the court considered. Paul, the court was sentencing Mark. And the state pointed some of those out. The statement by the defendant's wife. The circumstances around this offense. Things of that nature. These were all things, though, that the court had before it when it initially concurred in the sentence of 35 years. This wasn't new evidence that, okay, well, I gave him 35 years initially but now that I've heard all of this, I think 65 years is appropriate. That is why when we look at the evidence that was presented at the second sentencing hearing, and we call out the things that the court heard at the first sentencing hearing, what are we left with? What do we know at the second sentencing hearing that we didn't know at the first? And I would argue a significant thing based on the court, the verbiage, I guess, that the court used when it was imposing sentence. Talking about how this was Mark's or Brian's failure to talk to the author of the PSI was a significant factor. The court almost felt insulted by his decision not to participate in this process. This was a factor that wasn't present at his earlier sentencing hearing. And so I think we have to ask, did it contribute even a day, even an hour, to this addition of 20 years? The state can't meet its burden to show that it was harmless beyond a reasonable doubt. That's why I say when you look at this case and we're weighing what we view as valuable as a justice system, what expense is it to say we want to make sure that the defendant's constitutional right was not used against him? You've made that argument. It's a little different when you phrase it. You already know everything else. Now you know this. So is it that a defendant's failure to participate, refusal to participate can be used against him? Or is it the failure to participate should not be used against him in this case as an aggravating factor? I guess maybe I'm not understanding the question. Well, there's a difference between every defendant having the constitutional right and this defendant saying, you already know everything. So why should you hold it against me now that I've been not only convicted in a jury trial, but I'm facing a greater sentence because that plea arrangement's off the table, that I'm upset, that I'm angry, that I'm disappointed in myself. I just don't want to participate any further. Well, I'm sorry. I didn't mean to cut you off. No. What we know here is how the court viewed that. We know, again, reading the language that the court used, it's almost as though the court was personally insulted by the fact the defendant chose not to participate. That's something that can't be used against him. But here's the question. Are you asking us to say that any time a defendant refuses to participate in the preparation of the pre-sentence investigation, that's an invocation of their Fifth Amendment right, and the court can never consider that an aggravation? Or are you saying under the facts and circumstances of this case, the court should not have considered it an aggravation? And that's a difficult question for me to answer because I haven't thought of all the permutations of this. So in light of that, what I will say is, in this case, it should not have been considered by the court. And it obviously was. And we know that based on the nature of the court's comments. I want to go back to Issue 1B just very quickly. Justice Holderwhite, you asked about if the defendant thought his brother was reaching for the gun, if that would be sufficient. No, it wouldn't be under this language. The defendant's, or if the brother was reaching for a gun, pardon me, the defendant's testimony was, I saw my brother pull out a gun, and then I shot him. A jury who's looking at this, if the jury had been instructed that, or let me back up, if defense counsel had presented a theory, Brian could have shot Mark if Brian thought Mark was armed and maybe getting ready to use that gun against him. I think there may have been a different verdict here. Because instead, what the jury was told was, you can find that Brian acted in self-defense if you conclude that Mark pulled out the gun and pointed it at Brian, and that's why Brian shot him. But what about this language? I mean, the instruction said, if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm. So I don't understand if he convinced the jury that he reasonably believed that his brother was reaching for a gun to shoot him, I would think that that would satisfy that instruction. I see my time has expired. Can I answer? Yes, please do. It's an issue of what was presented to the jury versus what the jury may have believed. I am simply saying that what was presented to the jury was that Mark pulled out his gun, pointed it at Brian, and then Brian shot him. If the jury disbelieved that, defense counsel should have done everything possible to make sure that there was a plausible theory so that Brian could still have been acquitted under the self-defense idea if the jury didn't believe that specific testimony. So the jury didn't hear testimony that the defendant thought his brother was reaching for a gun? It simply heard testimony that Brian thought that Mark had pulled out a gun. He saw a flash and thought his brother had pulled out a gun? Was holding a gun or firing a gun. Which exacerbates his view, or worsens his view, or makes it more frightening because he thought at first his brother was going to go get a gun. Correct. Now he realizes he has a gun. Correct. Well, I'd be in imminent fear of great bodily harm or death. Well, it's... And I thought that's what the instruction said. It's all a matter of what the 12 people in the jury room could conclude, I guess. Thank you, counsel. Thanks, Ron. We'll take this matter under advisory.